DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
FAIR WIND SAILING, INC.,          )
                                  )
               Plaintiff,         )
                                  )
          v.                      )    Civil No. 2011-55
                                  )
H. SCOTT DEMPSTER, Individually   )
and Doing Business as VIRGIN      )
ISLAND SAILING SCHOOL and VIRGIN  )
ISLAND SAILING SCHOOL,            )
                                  )
               Defendants.        )
_____  )
```

ATTORNEYS:

**Michael C. Quinn, Esq.**
Dudley Topper & Feuerzeig
St. Thomas, U.S.V.I.
     *For Fair Wind Sailing, Inc.*

**Lisa M. Kömives, Esq.**
Bolt Nagi PC
St. Thomas, U.S.V.I.
     *For H. Scott Dempster and Virgin Island Sailing School.*


<u>ORDER</u>

**GÓMEZ, C.J.**

     Before the Court is the motion of H. Scott Dempster,

individually and doing business as Virgin Island Sailing School,

and Virgin Island Sailing School to dismiss Counts One and Three

of the amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 2

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fair Wind Sailing, Inc. ("Fair Wind") is a Michigan corporation with its principal place of business in Bingham Farms, Michigan. Fair Wind provides sailing lessons in the U.S. Virgin Islands through its sailing school located in St. Thomas, Virgin Islands. Fair Wind offers sailing instruction in "Basic Sailing, Bareboat Chartering, Advanced Sailing, Catamaran Sailing and Coastal and Celestial Navigation." (Am. Compl. ¶ 6, ECF No. 4.) Fair Wind's sailing courses are week-long lessons designed to prepare its students to "sail or bareboat charter cruising catamarans." (*Id.* at ¶ 7.) Fair Wind exclusively uses "catamaran vessels, such as the Robertson and Caine-built 45' Leopard model" for its lessons. (*Id.* at ¶ 8.)

Fair Wind hired Larry Bouffard ("Bouffard") as a sailing instructor and charter captain in July of 2007. Upon being hired by Fair Wind, Bouffard signed a written employment contract. Under the contract, Bouffard agreed that

> for the term of this Agreement and for a period of 24 month [sic] immediately following the Agreement's termination or conclusion, the Captain [Bouffard] shall not directly or indirectly, on Captain's own behalf of any other person or entity, aid, assist, consult or help any competitor of [Fair Wind's] located within an area limited to a 20 mile radius from any [Fair Wind] current teaching location, specifically: Annapolis, MD; St Thomas, USVI; Nanny Cay, BVI; Sandusky, OH; St. Clair Shores, MI and Worton, MD.

(Am. Compl. ¶ 11.) As a Fair Wind captain, Bouffard had access to Fair Wind's internal operating procedures and customer lists.

In June of 2010, Bouffard introduced H. Scott Dempster ("Dempster") to Fair Wind's St. Thomas management as a potential captain and instructor. Upon Bouffard's recommendation, Fair Wind hired Dempster as a captain and instructor in Fair Wind's Red Hook Harbor, St. Thomas location. Dempster did not sign an employment agreement.

Dempster worked for Fair Wind from July 17, 2010, until July 31, 2010. During Dempster's employment with Fair Wind, Fair Wind's St. Thomas management found Dempster's performance as a captain and an instructor to be unsatisfactory. As such, Fair Wind terminated Dempster's employment.

Subsequently, in August of 2010, Bouffard terminated his employment with Fair Wind. Thereafter, in or about October of 2010, Dempster and Bouffard began planning to start a sailing school of their own – Virgin Island Sailing School ("VISS"). In or before March of 2011, Dempster and Bouffard began operating their VISS in Red Hook Harbor. The VISS uses 45' catamarans for its sailing lessons.

On May 10, 2011, Fair Wind filed a complaint in this Court against Dempster, individually and doing business as VISS, and the VISS ("the defendants"). Subsequently, on May 18, 2011, Fair

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 4

Wind filed an amended complaint against the defendants. The amended complaint differs from the original only in the addition of an exhibit – Bouffard's employment contract with Fair Wind. Count One of the amended complaint alleges a Lanham Act violation against the defendants. Count Two alleges tortious interference with a contract against the defendants. Count Three alleges unjust enrichment against the defendants.

The defendants now move to dismiss Counts One and Three pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Fair Wind opposes.

## II. <u>DISCUSSION</u>

In order to survive a motion to dismiss, a plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id*. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 5

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1964-65 (internal citations omitted). Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.*, 127 S. Ct. at 1965).

### III. <u>ANALYSIS</u>

The defendants argue that Counts One and Three fail to state any claim upon which relief may be granted. Specifically, the defendants assert that Count One fails to state a claim for a Lanham Act violation. They assert that Count Three fails to state a claim for unjust enrichment. The plaintiff opposes. Alternatively, the plaintiff requests leave to amend its first amended complaint to the extent that the Court is inclined to grant the motion to dismiss.

"To determine the sufficiency of a complaint . . . a court must take three steps: First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' . . . . Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 6

assumption of truth' . . . . Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 881 (2009)).

**A. Lanham Act Claim: Trade Dress Infringement**

The Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action for trade dress infringement. The Act provides that

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 7

"'Trade dress' refers to the design or packaging of a product which serves to identify the product's source." *Shire US Inc. v. Barr Laboratories, Inc.*, 329 F.3d 348, 353 (3d Cir. 2003). It is "the total image or overall appearance of a product, and includes, but is not limited to, such *features* as size, shape, color or color combinations, texture, graphics, or even a *particular* sales technique." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000) (emphasis added). The purpose of trade dress protection is to "secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Shire US*, 329 F.3d at 353 (citation omitted) (alteration in the original).

> Trade dress protection, however, is not intended to create patent-like rights in innovative aspects of product design. *Eppendorf Netheler Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 355 (5th Cir. 2002). Thus, trade dress protection, unlike patent law which is not implicated here, does not foster innovation by preventing reverse engineering or copying of innovative product design features. *Id*. "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix*, 532 U.S. at 29, 121 S.Ct. at 1260. Therefore, *trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the product's source*. *Eppendorf*, 289 F.3d at 355.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 8

*Shire US*, 329 F.3d at 353 (emphasis added).

To allege a trade dress infringement claim, a plaintiff must plead that "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of plaintiff's product with that of defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).

The Lanham Act limits the scope of trade dress protection by providing that "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). This limitation "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995). A product feature is functional and cannot serve as trade dress "if it is essential to the use or purpose of the article or it affects the cost or quality of the article." *Qualitex*, 514 U.S. at 165.

Here, the defendants argue in their motion to dismiss that "Fair Wind does not — and cannot — identify the trade dress upon

which it alleges that Defendants have infringed." (Mot. to

Dismiss 5, ECF No. 37.)

Courts have addressed the level of specificity required to

identify a claimed trade dress. Though the analysis has

typically taken place in the context of motions for summary

judgment, it is instructive here. Indeed, plaintiffs should

detail "exactly what the[ir] trade dress consists of." *General

Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 416 (6th Cir.

2006) (concluding that the plaintiff sufficiently identified its

trade dress as "the exterior appearance and styling of the

vehicle design which includes the grille, slanted and raised

hood, split windshield, rectangular doors, squared edges, etc.")

(citing MCCARTHY ON TRADEMARKS § 8:3 (4th ed. 2001)); *see also

Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381

(2d Cir. 1997) (concluding that the plaintiff insufficiently

identified its "trade dress" when it alleged that "[t]he product

design and configuration of [Landscape's] Petoskey™ Group

Collection employs a number of distinctive elements which, when

taken together, constitute a trade dress recognizable by

architects, landscape architects and designers, as well as the

public at large."); *Liko AB v. Rise Lifts, Inc.*, 2008 WL 2977869

(E.D. Pa. July 31, 2008) ("Plaintiff's description of the trade

dress at issue is, by the very words of the description itself,

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 10

incomplete ('including but not limited to') and vague ('the overall shape and appearance of its portable patient lifts').").

In the instant case, Fair Wind alleges in its amended complaint that its trade dress includes its choice of boat, the format of its website, and its teaching curriculum. Specifically, Fair Wind alleges that

> 28. By March 2011, VISS started actual sailing school operations in Red Hook Harbor, St. Thomas, exclusively employing the same type of boat as Fair Wind, i.e., a 45' catamaran, and, as can be seen on the Website, the essential elements of Fair Wind's proprietary business model.

> 29. . . . . The similarity of the operation of VISS and Fair Wind is immediately evident in a cursory review of the Website. The marketing is identical, the teaching curriculum is identical, the teaching itinerary is identical, and the same procedures are used for student feedback. VISS even uses pictures of Fair Wind's boats on the Website to sell sailing lessons and charters as if it was Fair Wind. Fair Wind did not authorize use of pictures of its boats by VISS or anyone else. There is clearly competition between VISS and Fair Wind[.]

(Am. Compl. ¶ 29.)

Fair Wind's pleadings contain several deficiencies. The Court will address each of those deficiencies in turn.

### i.  *Allegation of a Distinctive Design*

First, it is clear from the amended complaint that Fair Wind does not allege facts as to which "incidental, arbitrary or ornamental" features of its boats, website, and teaching curriculum amount to its trade dress. *See generally Eppendorf-*

Fair Wind Sailing v. Dempster, et al.
Civil No. 2011-55
Order
Page 11

*Netheler-Hinz GMBH v. Ritter GMBH,* 289 F.3d 351, 355 (5th Cir.

2002) (explaining the types of product features that trade dress

protection covers). Trade dress claims are not meant to prevent

every instance of "copying goods and products." *See generally*

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23,

29 (2001) (explaining the scope of trade dress protection).

Vaguely alleging that VISS copied Fair Wind's boats, website

ideas, and teaching curriculum amounts to nothing more than

offering labels and conclusions. *See generally Twombly*, 127 S.

Ct. at 1959 ("Factual allegations must be enough to raise a

right to relief above the speculative level on the assumption

that all of the complaint's allegations are true.").

Additionally, the Court notes that Fair Wind has attached a

photograph of a catamaran to its amended complaint. Fair Wind

has not, however, marked the photograph or otherwise pointed to

any feature displayed in the photograph which represents its

"incidental, arbitrary or ornamental" trade dress. Without

knowing the precise product features that Fair Wind seeks to

protect, the Court struggles to undertake a productive Rule

12(b)(6) analysis.

Fair Wind's complaint is devoid of any allegations that the

design of its catamarans is inherently distinctive or has

acquired any secondary meaning. Fair Wind alleges that its St.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 12

Thomas location uses such catamarans as "the Robertson and Caine-built 45' Leopard model." (Am. Compl. ¶ 8.) It alleges that VISS uses similar catamarans. Significantly, it does not allege that such catamarans are inherently distinctive to Fair Wind. It does not allege that such catamarans have acquired a secondary meaning which causes customers to associate the boats with Fair Wind. Alleging that a competitor is being too competitive is not sufficient to state a claim for trade dress infringement.

Similarly, Fair Wind does not allege any facts supporting its assertion that its website design is inherently distinctive. Alleging that Fair Wind used a particular feedback method before VISS did, without more, is not sufficient to articulate the features of the website which make it inherently distinctive as compared to other companies.

Additionally, while Fair Wind appears to have gone to great lengths to describe its sailing class, it has not alleged any specific facts as to inherent distinctiveness or any secondary meaning which its class may have acquired.

### ii. Allegation that the Design is Non-Functional

Second, the Court is not satisfied that Fair Wind has sufficiently alleged that its product features are non-functional. Looking first to Fair Wind's choice of boat –

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 13

catamarans – Fair Wind makes several allegations as to

functionality. Fair Wind alleges that

> 6. . . . . Fair Wind offers sailing instruction in
> Basic Sailing, Bareboat Chartering, Advanced Sailing,
> Catamaran Sailing and Coastal and Celestial
> Navigation. All of these sailing lessons are available
> at Fair Wind's school in St Thomas, Virgin Islands.
>
> 7. . . . These are week-long, live-aboard sailing
> lessons designed to prepare students to learn to sail
> or bareboat charter cruising catamarans. . . .
>
> 8. Fair Wind's St. Thomas location exclusively employs
> catamaran vessels, such as the Robertson and Caine-
> built 45' Leopard model.

(Am. Compl. ¶¶ 6-8.)

Fair Wind alleges in its amended complaint that a purpose

of its sailing school is to teach students to sail catamarans.

Fair Wind alleges that its St. Thomas location offers courses

which rely on the use of catamarans to the exclusion of any

other type of boat. Significantly, all of Fair Wind's

allegations as to the functionality of its choice of boat give

rise to the inference that catamarans are essential to the

purpose of its sailing school. Fair Wind's allegations regarding

the essential nature of catamarans to its operations belie Fair

Wind's assertion that its catamarans are non-functional. Indeed,

Fair Wind does not allege any facts which highlight the non-

functionality of its catamarans.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 14

Looking next to Fair Wind's allegations as to the

functionality of its website design, Fair Wind alleges that

> 30. Below is just one of the pictures used by Larry
> Bouffard's new employer, VISS on the Website: . . . .
>
> . . . .
>
> 32. . . . . Bouffard boasted about the experience he
> received as an instructor with Fair Wind on the VISS
> website . . .
>
> 33. Moreover, VISS places on the Website "student
> testimonials" from students who took classes with
> Dempster while he was working for Fair Wind: . . .
>
> 34. . . . . Dempster and VISS are provided with the
> ability to market VISS as having years of experience,
> when without Bouffard, VISS is a mere start-up company
> with little instructional experience. Since prior
> sailing and instruction experience is critical to
> marketing a sailing school or charter sailing
> operation, Bouffard's experience provides VISS
> immediate credibility that could it not otherwise gain
> . . .

(Am. Compl. ¶¶ 30-33.)

The substance and tone of Fair Wind's factual allegations,

especially those alleged in paragraph 34, give rise to the

inference that the marketing techniques and student testimonials

on its website are "essential to the use or purpose of" its

sailing school. The allegations also give rise to the inference

that the format of the website "affects the cost or quality" of

the sailing school. There are no allegations that give rise to

the inference that the website's features are non-functional.

*Qualitex Co.*, 514 U.S. at 165.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 15

Fair Wind also alleges that its teaching curriculum and itinerary amount to protectable trade dress under the Lanham Act. Specifically, Fair Wind pleads the following facts:

> 6. . . . . Fair Wind offers sailing instruction in Basic Sailing, Bareboat Chartering, Advanced Sailing, Catamaran Sailing and Coastal and Celestial Navigation. All of these sailing lessons are available at Fair Wind's school in St Thomas, Virgin Islands.
>
> 7. Fair Wind Sailing School's "Instant Bareboater + Catamaran"® sailing class combines Fair Wind's Instant Bareboater Instruction with its Catamaran Sailing Instruction certification. These are week-long, live-aboard sailing lessons designed to prepare students to learn to sail or bareboat charter cruising catamarans. The course covers ICSO certification in Basic Sailing Instruction, Basic Cruising Sailing Instruction, Bareboat Charter Sailing Instruction, and Catamaran Sailing Instruction. This sailing instruction prepares students to skipper boats as large as 50 feet. In addition, it covers instruction on key boat systems required to live aboard a sailboat such as engine maintenance, cooking and provisioning procedures and basic marine electrical and plumbing systems. The course also introduces the student to basic coastal navigation techniques. No prior sailing experience is necessary to enroll in these sailing lessons. Because it is based on Fair Wind's specialized experience and efforts, the "Instant Bareboater + Catamaran"® sailing class is a jealously guarded trade secret.

(Am. Compl. ¶¶ 6-7.)

Fair Wind's allegations give rise to the inference that its teaching curriculum is essential to the use or purpose of its sailing school. Fair Wind does not allege that its curriculum is non-functional. *Qualitex Co.*, 514 U.S. at 165.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 16

Fair Wind has failed to specifically identify the product features it seeks to protect. Fair Wind has also failed to sufficiently plead the first two elements necessary to state a trade dress infringement claim. As such, the Court will not reach the "likelihood of confusion" element.

**B. Unjust Enrichment**

"A claim for unjust enrichment is a recognized cause of action in the Virgin Islands." *Frank v. GVI*, Civil No. 2009-66, 2012 WL 611373, *8 (D.V.I. Feb. 23, 2012) (hereinafter, "*Frank II*"). "An unjust enrichment claim may proceed under a tort theory or under a quasi-contract theory." *Frank v. GVI*, Civil No. 2009-66, 2010 WL 1417857, *11 (D.V.I. March 31, 2010) (hereinafter, "*Frank I*") (citing *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris*, Inc., 171 F.3d 912, 936 (3d Cir. 1999)). "As a tort cause of action, 'an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e. if defendant is permitted to keep the benefit of his tortious conduct he will be unjustly enriched).'" *Frank I*, 2010 WL 1417857 at *11.

To state a claim for unjust enrichment, a plaintiff must allege "that the defendant was enriched, that such enrichment was at the plaintiff's expense and that the circumstances were such that in equity and good conscience the defendant should

return the money or property to the plaintiff." *Government Guarantee Fund of Republic of Finland v. Hyatt Corp.*, Civil No. 1995-49, 955 F. Supp. 441, 460 (D.V.I. 1997).

Here, Fair Wind asserts that it has endured financial harm due to the defendants' allegedly tortious conduct. (Am. Compl. ¶¶ 35, 38.) Specifically, Fair Wind alleges that the defendants improperly used Fair Wind's protected trade dress. (Am. Compl. ¶ 29.) Fair Wind alleges that the defendants improperly induced one of Fair Wind's employees to breach an employment contract with Fair Wind. (Am. Comp. ¶¶ 24, 25, 27.) Fair Wind also alleges that the defendants' actions resulted in a financial loss in bookings by Fair Wind amounting to approximately $48,000 for the time period spanning May through June, 2011. (Am. Compl. ¶ 38.)

Indeed, such allegations may be sufficient to satisfy the second and third elements for an unjust enrichment claim – "that such enrichment was at the plaintiff's expense and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Hyatt Corp.*, 955 F.Supp. at 460. Significantly, Fair Wind does not allege any facts to support the first element required for an unjust enrichment claim – that the defendant was enriched.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 18

Fair Wind alleges that "Dempster and VISS have been enriched by their improper and unjustified conduct." (Am. Compl. ¶ 48.) Fair Wind does not allege facts supporting its bare assertion that the defendants were enriched. *E.g., Hyatt Corp.*, 955 F. Supp. at 460 (finding the plaintiff's unjust enrichment allegations insufficient and explaining that no claim of unjust enrichment lies for "hypothetical future liabilities.").

In its prayer for relief, Fair Wind petitions the Court for "an order placing a constructive trust on all profits made by VISS and Dempster from the inception of their inequitable conduct through the time of trial, in excess of $75,000.00." (Am. Compl. 11.) However, Fair Wind does not allege in its amended complaint that the defendants realized any profits. Fair Wind does not even allege that the defendants have received any business. Further, Fair Wind does not allege in its amended complaint that the defendants were otherwise financially enriched. As such, Fair Wind has failed to allege sufficient facts in support of its claim for unjust enrichment. *See generally Hyatt Corp.*, 955 F. Supp. at 460 (concluding that the plaintiff's "*potential* recovery on collateral for money loaned simply cannot support a claim for unjust enrichment.") (emphasis added).

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 19

## IV. <u>CONCLUSION</u>

The premises considered, it is hereby

**ORDERED** that the motion to dismiss is **GRANTED**; and it is further

**ORDERED** that Fair Wind shall, to the extent it wishes to do so, amend Counts One and Three of its complaint no later than 3:00 p.m. on March 25, 2013.

S\_____

**Curtis V. Gómez**
**Chief Judge**