DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| FAIR WIND SAILING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 2011-55 |
| ) | |
| H. SCOTT DEMPSTER, Individually ) | |
| and Doing Business as VIRGIN ) | |
| ISLAND SAILING SCHOOL and VIRGIN ) | |
| ISLAND SAILING SCHOOL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

ATTORNEYS:

**Michael C. Quinn, Esq.**
Dudley Topper & Feuerzeig
St. Thomas, VI
 *For Fair Wind Sailing, Inc.*

**Lisa M. Kömives, Esq.**
Bolt Nagi PC
St. Thomas, VI
 *For H. Scott Dempster and Virgin Island Sailing School.*

## ORDER

**GÓMEZ, J.**

Before the Court is the Third Circuit's mandate vacating the Court's previous award of attorney's fees and remanding the case for further proceedings. Also before the Court is the motion of H. Scott Dempster and Virgin Island Sailing School seeking a hearing on the remand.

# I. FACTUAL AND PROCEDURAL HISTORY

This action commenced on May 10, 2011, when Fair Wind Sailing School, Inc. ("Fair Wind Sailing") filed a complaint in this Court against the Virgin Island Sailing School ("VISS") and H. Scott Dempster ("Dempster"), individually and doing business as "VISS." Fair Wind Sailing alleged a Lanham Act violation, tortious interference with a contract, and unjust enrichment.

Dempster and VISS moved to dismiss the Lanham Act and unjust enrichment claims. On March 5, 2013, this Court granted the motion to dismiss. Subsequently, on June 25, 2013, the parties filed a joint stipulation of dismissal for the last remaining claim, tortious interference with contract.

Dempster and VISS then moved for an award of attorney's fees. Applying 5 V.I.C. § 541, the Court held that Fair Wind Sailing was liable to Dempster and VISS for attorney's fees in the amount of $36,347.50. The Court did not apportion the attorney's fees incurred between the federal and territorial claims.

Fair Wind Sailing then appealed the Court's dismissal of its claims and the award of attorney's fees. On appeal, the Third Circuit affirmed the Court's dismissal of Dempster and VISS's claims. At the same time, the Third Circuit noted that 5 V.I.C. § 541 does not permit the Court to award attorney's fees

incurred for work done on federal causes of action--such as the Lanham Act claim.

Attorney's fees incurred for work on a Lanham Act claim may only be awarded if a case is "exceptional" under Section 35(a) of the Lanham Act. As such, the Third Circuit vacated the award of attorney's fees and remanded the case to this Court to: (1) determine whether the case is exceptional under Section 35(a) of the Lanham Act; and (2) if the case is not exceptional under Section 35(a) of the Lanham Act, apportion the attorney's fees incurred between the territorial and federal claims.

Thereafter, Dempster and VISS filed a motion seeking a hearing on the remand.

## II. **ANALYSIS**

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Historically, in the Third Circuit, no attorney's fees could be awarded unless the district court engaged in a two-step inquiry. Indeed, in *Green v. Fornario*, 486 F.3d 100 (3d Cir. 2007), the Third Circuit provided some guidance on the factors that district courts should consider before awarding attorney's fees. The *Green* Court noted:

> First, the District Court must decide whether the defendant engaged in any culpable conduct. *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 952 F.2d 44, 47

>        (3d Cir.1991). We have listed bad faith, fraud, malice, and knowing infringement as non-exclusive examples of the sort of culpable conduct that could support a fee award. *Id.; see also Securacomm Consulting, Inc. v. Securacom, Inc.,* 224 F.3d 273, 280 (3d Cir.2000). Moreover, the culpable conduct may relate not only to the circumstances of the Lanham Act violation, but also to the way the losing party handled himself during the litigation. *Securacomm*, 224 F.3d at 282. Second, if the District Court finds culpable conduct, it must decide whether the circumstances are "exceptional" enough to warrant a fee award. *See Ferrero*, 952 F.2d at 49 (noting that the court may consider factors other than the defendant's culpable conduct, such as the closeness of the liability question and whether the plaintiff suffered damages). In sum, a district court may not award fees without a finding of culpable conduct, but it may decline to award them despite a finding of *104 culpable conduct based on the totality of the circumstances.

*Id.* at 103-04.

Since *Green*, the United States Supreme Court has had occasion to address the proper approach that needs to be taken when awarding attorney's fees in a related context--patent litigation.

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014), the Supreme Court held that it was unduly restrictive to limit district courts to factors similar to the factors enumerated in *Green*. *See Octane Fitness, LLC*, 134 S. Ct. at 1756-57. In light of the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health &*

*Fitness, Inc.*, the Third Circuit has instructed the Court to find that a claim is exceptional under the Lanham Act:

> when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an "unreasonable manner." *Id.; cf. Green,* 486 F.3d at 103 (noting that a district court may award fees as a result of either the circumstances of the Lanham Act violation or the way in which the losing party litigated the claim). Whether litigation positions or litigation tactics are "exceptional" enough to merit attorneys' fees must be determined by district courts "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness,* 134 S.Ct. at 1756. Importantly, that discretion is not cabined by a threshold requirement that the losing party acted culpably. The losing party's blameworthiness may well play a role in a district court's analysis of the "exceptionality" of a case, but *Octane Fitness* has eliminated the first step in our two-step test for awarding fees under § 35(a) of the Lanham Act.

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014).

> To establish trade dress infringement under the Lanham Act, a plaintiff must prove that (1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product.

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).

In dismissing Fair Wind Sailing's Lanham Act claim, this Court held that: (1) "[Fair Wind Sailing] has not alleged any

specific facts as to inherent distinctiveness or any secondary meaning which its class may have acquired"; and (2) Fair Wind [Sailing] failed to allege any facts indicating that any of its product features were non-functional. *Fair Wind Sailing, Inc. v. Dempster*, No. CIVIL 2011-55, 2013 WL 1091310, at *4-*6. Although the Court granted Fair Wind Sailing leave to amend its complaint, no amendment was ever filed.

The circumstances presented here are analogous to the circumstance presented in *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677 (9th Cir. 2012). In that case, the plaintiffs, Secalt, S.A., and Tractel, Inc. (collectively, "Tractel") manufactured traction hoists.[1] *Id.* at 680. Tractel filed a trade dress claim against the defendant, Jiangsu Shenxi Construction Machinery Co. ("Jiangsu"), alleging that Jiangsu's traction hoist infringed on Tractel's trade dress. *Id.* at 681.

The district court granted summary judgment against Tractel, finding that "when viewed in the most favorable light, the admissible evidence submitted by Tractel fails to suggest that the alleged . . . trade dress is non-functional . . . ." *Id.* at 683 (internal quotations omitted). The district court

---

[1] Traction hoists "are commonly affixed to suspended platforms to power the platforms up and down stationary wire ropes." *Secalt S.A.*, 668 F.3d at 681.

also determined that the action was "exceptional" and awarded attorney's fees to Jiangsu. *Id.*

On appeal, the Ninth Circuit affirmed the district court's grant of summary judgment and affirmed the award of attorney's fees. *Id.* at 690. In reviewing the attorney's fees award, the court reviewed the district court's conclusion that an action was exceptional *de novo*.[2] *Id.* at 697. When the Ninth Circuit found that the action was exceptional, it reasoned as follows:

> The line distinguishing exceptional cases from non-exceptional cases is far from clear. It is especially fuzzy where the *defendant* prevails due to plaintiff's failure of proof. We have previously held that an action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits. *See Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1156 (9th Cir.2002) ("The false advertisement claim was groundless and unreasonable because the statements in the advertisements at issue were true and [plaintiff] had no reasonable basis to believe they were false."); *id.* ("the dilution of trademark claim was groundless and unreasonable because it had no legal basis"). In other words, exceptional cases include instances where plaintiff's case is frivolous or completely lacking in merit.
>
> Although Tractel does not ultimately prevail, were it able to provide some legitimate evidence of nonfunctionality, this case would likely fall on the unexceptional side of the dividing line. When summary judgment motions were heard, the parties had been in discovery for almost two years, taken multiple depositions, and compiled substantial documents. Yet, Tractel could not identify the

---

[2] Once the court concluded that the action was exceptional, it reviewed the district court's decision to award attorney's fees under an abuse of discretion standard. *Secalt S.A.*, 668 F.3d at 697.

aesthetic value of the exterior design, and was reduced to arguing that it was pursuing a "cubist" look and feel even though its own witnesses undercut this argument.

In addition, months before the summary judgment proceedings, the Northern District of Georgia, in a separate action regarding the same claimed trade dress, denied Tractel's motion for a preliminary injunction because "there's nothing about [Tractel's] design that is arbitrary, incidental or ornamental." The court went even further: "Each of the features of the alleged trade dress, based on the evidence that I've heard, serve a function in the operation of the hoist .... There's an utter failure of evidence...." Although the Georgia decision was made at the preliminary injunction stage, Tractel was on notice that even on *its* own motion for relief, there was "an utter failure" of proof. Given that evidence of nonfunctionality would be primarily in Tractel's possession, its inability to demonstrate nonfunctionality in the Georgia case seriously undercuts its arguments that it was raising "debatable issues of law and fact" in this action. *Stephen W. Boney, Inc.,* 127 F.3d at 827.

As it turned out, the testimony at summary judgment in Nevada played out just like in Georgia—there was an utter failure of proof. Tractel failed to "provide the court with any evidence that there were 'debatable issues of law and fact' with regards to the trade dress." From its own witnesses, Tractel at best offered either unsupported or conclusory claims about the design. Fatal to its claim was the testimony of its own witnesses who honestly laid out the functional nature of the design. Lacking was any evidence, like engineering notebooks or testimony from the designers, about design or aesthetics. Even more devastating was the testimony of third-party witnesses called by Tractel who laid bare the claim of nonfunctionality. For example, they testified that the fins play an important function of dissipating heat and are not for aesthetics. Likewise, the shape of the hoist is practical because it fits in confined construction sites and

it is "more efficient and more compact" than some of the other hoists on the market.

One of Tractel's distributors, who was also a hoist industry professional, summed up the functional reality of the Tractel hoist:

> [T]he entire design is predicated on function from what I've seen, and again as with most hoist manufacturers, every element on there is critical to the design otherwise they wouldn't waste the money or the weight which again comes back to the weight is the key component. So in my opinion every element on there is important to the function.

Faced with this evidence, the slim reed offered by Tractel is a design patent for a hoist that does not mirror the Tractel hoist. Tellingly, Tractel does not offer evidence that it has any claim or rights in the patent or even that it is a valid patent. Although we do not favor a mini patent trial within the trade dress context, Tractel cannot simply raise the specter of a third-party patent and hope it will serve to support nonfunctionality. We need not decide whether, under different circumstances, a trade dress claimant could rely on its own identical design patent to overcome *689 the lack of any other evidence of nonfunctionality, though the case law suggests otherwise. Nonetheless, Tractel cannot even make that claim. Simply pointing to a design patent with similarities (and differences) to its claimed trade dress is insufficient to raise a "debatable issue of law or fact."

Although the timing of Tractel's suit could be considered suspicious, such preemptive suits are not uncommon in intellectual property matters. Even if Tractel had an ulterior anti-competitive motive, had it made a colorable claim, that factor would weigh in our analysis. *See Mennen Co. v. Gillette Co.,* 565 F.Supp. 648, 657 (S.D.N.Y.1983), *aff'd,* 742 F.2d 1437 (2d Cir.1984) (attorney's fees justified where suit was filed "as a competitive ploy"). Instead,

> Tractel's action appears to be a conscious, albeit misguided, attempt to assert trade dress rights in a non-protectable machine configuration. We affirm the district court's finding that this is an exceptional case meriting attorney's fees under 15 U.S.C. § 1117(a).

*Secalt S.A.*, 668 F.3d at 687-89.

The Ninth Circuit held that the case was exceptional at the summary judgment stage because the evidence indicated that the alleged trade dress was functional. In this case, the Court dismissed the trade dress claim at the motion to dismiss stage because the complaint failed to state a claim. Fair Wind Sailing could not sufficiently allege the features that constituted trade dress, let alone include any allegations of non-functionality.

Plaintiffs are the "masters of their [own] complaints." *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 492, 109 S. Ct. 3040, 3043, 106 L. Ed. 2d 410 (1989). As such, as the plaintiff in this action, Fair Wind Sailing could have chosen to include in its complaint all the allegations necessary to state a claim. Indeed, unlike the plaintiffs in *Secalt S.A.* who needed to prove the existence of material facts, Fair Wind Sailing needed only to *allege* the material facts. The burden placed on Fair Wind Sailing was thus significantly easier to meet than the burden placed on the plaintiffs in *Secalt S.A.* Nevertheless, Fair Wind

Sailing's complaint made no such allegations, and, when given leave to amend, Fair Wind Sailing never filed an amended complaint including such allegations. That is not surprising given that the allegations in the complaint did not even rise to the level of a colorable claim. Rather, the allegations amount to an "attempt to assert trade dress rights in . . . non-protectable," *Secalt S.A.*, 668 F.3d at 689, elements of Fair Wind Sailing's business. Under these circumstances, the reasoning in *Secalt S.A.* applies with at least equal force in this case.

Moreover, the allegations in Fair Wind Sailing's complaint were devoid of legal significance. Given the slim reed on which Fair Wind Sailing based its claim, Fair Wind Sailing had no legal or reasonable basis to believe it would succeed on the merits. Where, as here, a plaintiff's claim is so lacking in merit, it is appropriately categorized as exceptional for Lanham Act purposes.[3] *See Secalt S.A.*, 668 F.3d at 687-89.

In light of these circumstances, the Court finds that there is an unusual discrepancy in the merits of the positions taken by the parties. Therefore, the Court will award attorney's fees

---

[3] To be clear, the Court is not holding that every Lanham Act claim dismissed for failure to state a claim is exceptional. The Court's holding is limited to those complaints which are dismissed for failure to identify any feature that is even arguably non-functional.

*Fair Wind Sailing v. Dempster, et al.*
Civil No. 2011-55
Order
Page 12

on the Lanham Act claim. *See Fair Wind Sailing, Inc.*, 764 F.3d at 315. Because the Court: (1) finds that an award of attorney's fees is appropriate on the Lanham Act claim; and (2) previously found that an award of attorney's fees was appropriate on the territorial law claims, the Court holds that its prior award of $36,347.50 in attorney's fees was appropriate.

The premises considered; it is hereby

**ORDERED** that Fair Wind Sailing is liable to Dempster and VISS for attorney's fees in the amount of $36,347.50; and it is further

**ORDERED** that the motion for a hearing is **MOOT**.

S\_____
   **Curtis V. Gómez**
   **District Judge**